UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------x
PRESTIGE BUILDER &
MANAGEMENT LLC,                                              MEMORANDUM AND ORDER

        Plaintiff,                                                          12 Civ. 1947 (ILG) (LB)

    - against -

SAFECO INSURANCE COMPANY OF
AMERICA, et al.

        Defendants.
----------------------------------------------------------x
GLASSER, Senior United States District Judge:

      Plaintiff Prestige Builder & Management LLC ("Prestige" or "plaintiff"), a New York-based subcontractor, brings this diversity action against several California-based employees of Triton Structural Concrete Incorporated ("Triton"), a general contractor, and Triton's surety, Safeco Insurance Co. of America ("Safeco," collectively "defendants"), seeking payment for work completed as part of the construction of a New York City Department of Parks and Recreation ("Parks Department") amphitheater in Harlem's Marcus Garvey Park. Prestige seeks $134,927.66 for a payment bond executed by Safeco, as surety for Triton, issued to the City of New York in connection with the project. It also asserts fraud claims against Triton employees Mary Anne Wilson, Elaina Gallegos, and Debra Peterson (the "individual defendants"), alleging that they falsely certified and submitted to the Parks Department forms stating that there were no funds due to any subcontractors who worked on the project when, in fact, $134,927.66 remained due and owing to Prestige.

      Currently before the Court is defendants' motion to dismiss the fraud claims against the individual defendants pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal

Rules of Civil Procedure. For the reasons set forth below, defendants' motion is hereby DENIED.

## I. BACKGROUND

The following facts are taken from Prestige's complaint and are accepted as true for purposes of this motion. On or about April 2010, Triton entered into a contract with the Parks Department to serve as a general contractor for the construction of an amphitheater at the Pelham Fritz Recreation Center in Harlem's Marcus Garvey Park (the "project"). Complaint dated Apr. 16, 2012 ¶ 10 ("Compl.") (Dkt. No. 1). Safeco, as surety for Triton, executed and delivered a payment bond to the City of New York, binding itself to pay all of those who worked on the project.

Prestige was one such subcontractor and, on or about June 11, 2010, it entered into two contracts with Triton, one to perform "stage framing work" and the other to perform "wood frame construction work" as part of the project. Id. ¶¶ 12-13. Between approximately January 1, 2011 and May 25, 2011, Prestige performed its work under the agreements and regularly billed Triton for it. Id. ¶¶ 47-48. In the intervening months, Prestige avers, several of Triton's employees falsely certified and submitted to the Parks Department forms dealing with work completed for various laborers on the project, including Prestige. Id. ¶¶ 25, 37, 49.

On or about March 9, 2011, Mary Anne Wilson ("Wilson"), Triton's controller, certified and submitted to the Parks Department a "Certificate of Contractor to the Controller or Financial Officer of the City of New York Form 42" ("Form 42") that contained false statements that there were no monies due and owing laborers on the project and that failed to identify Prestige as a subcontractor performing work as part of

2

the project.  Id. ¶¶ 25, 27.  Next, on or about May 18, 2011, Elaina Gallegos ("Gallegos"), an accounts payable manager at Triton, certified and submitted to the Parks Department a "Certificate of Contractor to the Controller or Financial Officer of the City of New York Form 44" that contained false statements regarding the amount of work performed by Prestige and that failed to identify any amounts due to Prestige under the agreements.  Id. ¶ 37.  Finally, on May 25, 2011, Debra Peterson ("Peterson"), Triton's manager, certified and submitted to the Parks Department a separate Form 42 that contained the same false information as the first Form 42.  Id. ¶ 49.  During the period these individuals submitted the forms to the Parks Department, however, Triton still owed Prestige $134,927.66 for work completed pursuant to the parties' agreements.  Id. ¶¶ 27, 39, 51.  As a result of these statements, the Parks Department made payments to Triton under their agreement that included money due to Prestige.  Id. ¶ 30, 42, 54.

Prestige initiated this action on April 20, 2012, asserting a claim under N.Y. Finance Law § 137 against Safeco[1] and fraud claims against Wilson, Gallegos, and

---

[1] New York State Finance Law § 137 provides that, for any "contract for the prosecution of a public improvement for . . . a public benefit corporation," a condition to the approval of such contract is "a bond guaranteeing prompt payment of moneys due to all persons furnishing labor or materials to the contractor or any subcontractors in the prosecution of the work provided for in such contract."  N.Y. State Fin. Law § 137(1) (McKinney 2012).  It also provides a provides a private right of action to subcontractors, such as Prestige, that are not promptly paid by the general contractor:

> Every person who has furnished labor or material, to the contractor or to a subcontractor of the contractor, in the prosecution of the work provided for in the contract and who has not been paid in full therefor before the expiration of a period of ninety days after the day on which the last of the labor was performed or material was furnished by him for which the claim is made, shall have the right to sue on such payment bond in his own name

Peterson.  Defendants, on May 15, 2012, filed their motion to dismiss the fraud claims against the individual defendants.  Defendants move to dismiss the complaint on several grounds, arguing that Prestige lacks standing to assert its claims and fails to plead a cause of action for fraud.  Memorandum of Law in Support of Defendants' Motion to Dismiss dated May 15, 2012 ("Defs.' Mem.") at 1-2 (Dkt. No. 3).  On June 12, 2012, Prestige filed its papers in opposition to defendants' motion, Memorandum of Law in Opposition to Defendants' Motion to Dismiss dated June 12, 2012 ("Pl.'s Opp'n") (Dkt. No. 6), and on June 26, 2012, defendants filed their reply.  Reply Memorandum in Further Support of Motion to Dismiss dated June 26, 2012 ("Defs.' Reply") (Dkt. No. 7).

## II. DISCUSSION

### A. Legal Standard

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires a complaint to include "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  To survive a motion to dismiss pursuant to Rule 12(b)(6), the plaintiff's pleading must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  A claim has facial plausibility "when the plaintiff pleads factual content that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Iqbal, 556 U.S. at 678.

---

> for the amount, or the balance thereof, unpaid at the time of commencement of the action . . . .

Id. at § 137(3).

Although detailed factual allegations are not necessary, the pleading must include more than an "unadorned, the-defendant-unlawfully-harmed-me accusation;" mere legal conclusions, "a formulaic recitation of the elements of a cause of action," or "naked assertions" by the plaintiff will not suffice. Id. (internal quotations and citations omitted). This plausibility standard "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. (quoting Twombly, 550 U.S. at 556). Determining whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" Iqbal, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

### B. Article III Standing

Defendants contend that Prestige lacks standing to bring this action. Defs.' Mem. at 10-12. Standing is a threshold issue and "an essential and unchanging part of the case-or-controversy requirement of Article III." Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992) (citing Allen v. Wright, 468 U.S. 737, 751 (1984)). Article III standing "requires that an injury be concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling." Monsanto Co. v. Geertson Seed Farms, ––– U.S. ––––, 130 S. Ct. 2743, 2752 (2010) (citing Horne v. Flores, 557 U.S. 433, 445 (2009)). "[I]n all standing inquiries, the critical question is whether [the plaintiff] has 'alleged such a personal stake in the outcome of the

controversy as to warrant his invocation of federal-court jurisdiction.'" Horne, 557 U.S. at 445 (quoting Summers v. Earth Island Inst., 555 U.S. 488, 493 (2009)).[2]

Defendants argue that (1) Prestige has suffered no injury and thus has no personal stake because "Prestige is not seeking to assert its own legal rights but, rather, the rights of [the Parks Department]," Defs.' Mem. at 11; (2) since any alleged misrepresentations were directed at the Parks Department and not Prestige, only the Parks Department can claim to have been defrauded; and (3) because "Prestige cannot show that it has suffered a compensable injury as a direct result of the actions of Triton's employees," it lacks standing. Id.

Plaintiff counters by invoking the doctrine of "third-party reliance" for fraud claims under New York law.[3] Pl.'s Opp'n at 7-12. Prestige contends that the individual defendants' fraudulent representations to the Parks Department induced the Parks Department to pay funds to Triton, instead of withholding them for payment to Prestige. Id. at 11. Prestige was thus injured by depriving it of money that it is owed and by harming "its right to assert a mechanic's lien in order to secure the payment of its claim." Id.

Although both parties point to conflicting lines of cases regarding New York's third-party reliance doctrine, the Court holds that the doctrine is applicable here and provides Prestige with standing to pursue its claims against the individual defendants.

---

[2] "For purposes of ruling on a motion to dismiss for want of standing, both the trial and reviewing courts must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party." Warth v. Seldin, 422 U.S. 490, 501 (1975).

[3] Because this is a diversity case, New York law applies. See, e.g., Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496-97 (1941).

### 1. The Third-Party Reliance Doctrine is Good Law in New York

The doctrine of third-party reliance operates as an exception to the normal justifiable reliance element of common law fraud.[4] While the plaintiff alleging fraud must normally show that it reasonably relied upon a misrepresentation made by the defendant to its detriment, the doctrine of third-party reliance permits the plaintiff to show that a third-party relied upon a misrepresentation by the defendant, which resulted in injury to the plaintiff. See Buxton Mfg. Co. v. Valiant Moving & Storage, Inc., 239 A.D.2d 452, 453-54 (2d Dep't 1997).

This doctrine has its origins in a trio of New York Court of Appeals cases from the Nineteenth Century. In Bruff v. Mali, 36 N.Y. 200, 205-06 (1867), the court permitted a plaintiff who purchased stock from a third-party to bring suit against the defendant who induced him to buy the stock, despite the fact that the defendant's fraudulent misrepresentations were not directed at the plaintiff. In Rice v. Manley, 66 N.Y. 82, 87 (1876), the court held that "it matters not whether the false representations be made to the party injured or to a third party, whose conduct is thus influenced to produce the injury, or whether it be direct or indirect in its consequences. " Finally, in Eaton, Cole & Burnham Co. v. Avery, the court reaffirmed that "it is not essential that a representation should be addressed directly to the party who seeks a remedy for having been deceived and defrauded by means thereof." 83 N.Y. 31, 33-34 (1880) (citing Bruff, 36 N.Y. at 205-06). Thus, "the New York Court of Appeals has held not once, but three times, that a claim for common law fraud may rest on third-party reliance." Chevron Corp. v.

---

[4] The elements of common law fraud under New York law are discussed in greater detail infra.

Donziger, --- F. Supp. 2d ----, 2012 WL 1711521, at *17 (S.D.N.Y. May 14, 2012) (citations omitted).

Nonetheless, "about a century after the Eaton line of cases, without any reference to binding authority from their parent court, lower New York state courts began to hold that common law fraud was not cognizable when based on the reliance of a third-party." N.B. Garments (PVT.) Ltd. v. Kids Int'l Corp., No. 03 Civ. 8041(HB), 2004 WL 444555, at *3 (S.D.N.Y. Mar. 10, 2004) (citations omitted). Defendants specifically point to Garelick v. Carmel, which held that "in order to plead a valid cause of action sounding in fraud, the complaint must set forth all of the elements of fraud[,] including the making of material representations by the defendant to the plaintiff." 141 A.D.2d 501, 502 (2d Dep't 1988) (citing Escoett & Co. v. Alexander & Alexander, 31 A.D.2d 791 (1st Dep't 1969)); Defs.' Reply at 2, 6. More recently, the lower New York state courts have reversed course and recognized the third-party reliance doctrine. See Ruffing v. Union Carbide Corp., 308 A.D.2d 526, 528 (2d Dep't 2003) ("[F]raud may exist where a false representation is made to a third party, resulting in injury to the plaintiff."); Buxton, 239 A.D.2d at 453-54; Desser v. Schatz, 182 A.D.2d 478, 479-80 (1st Dep't 1992) ("[I]t is of no moment . . . that the false representation was not made directly to plaintiff.").

Despite the conflicting authorities among the lower New York courts, plaintiff correctly notes that "the above-mentioned New York Court of Appeals decisions . . . have never been overruled." Pl.'s Opp'n at 9. Defendants argue that a series of relatively recent New York Court of Appeals opinions have effectively overruled the Eaton line of cases. Defs.' Reply at 1-3. However, the cases cited by defendants merely state the elements of common law fraud under New York law, do not relate to the third-party

8

reliance doctrine, and make no mention of the Eaton line of cases. Defendants especially rely on Mandarin Trading, Ltd. v. Wildenstein, 944 N.E.2d 1104, 1108-09 (N.Y. 2011), which they argue rejects the third-party reliance doctrine. Defs.' Reply at 2-3. They misread the holding. Indeed, Mandarin Trading is inapposite because it is a fraudulent omission case. Under New York law, a fraudulent omission requires "an allegation that the defendant had a duty to disclose material information and that it failed to do so." Mandarin Trading, 944 N.E.2d at 1108 (internal quotation omitted). Because the court found that element was not satisfied, it upheld the dismissal of the fraud claims. Id. at 1108-09. That holding is alien to the doctrine of third-party reliance and is irrelevant to this case. Finally, defendants mock the Eaton line of cases as "outdated" and "antiquated." Defs.' Reply at 3. But "a federal court sitting in diversity must apply the law of the forum state and it must defer to the voice of that state's highest court—however antiquated its view of the law may seem." N.B. Garments, 2004 WL 444555, at *3 (internal quotation omitted). "We thus are faced with old but square holdings by the New York Court of Appeals supporting fraud claims based on third-party reliance and a division of more modern authority at the intermediate appellate level[,] albeit with the balance favoring the same position." Chevron Corp., 2012 WL 1711521, at *17.

Conflict among the New York state courts has led to some confusion in the federal courts. In Cement & Concrete Workers Dist. Council Welfare Fund v. Lollo, the Second Circuit held that "a plaintiff does not establish the reliance element of fraud for purposes of . . . New York law by showing only that a third party relied on a defendant's false statements." 148 F.3d 194, 196 (2d Cir. 1998) (citing Garelick, 141 A.D.2d at 502).

9

The Second Circuit has twice reaffirmed this holding. See City of New York v. Smokes-Spirits.com, Inc., 541 F.3d 425, 454 (2d Cir. 2008), overruled on other grounds, Hemi Group, LLC v. City of New York, --- U.S. ----, 130 S. Ct. 983 (2010); Fed. Treasury Enter. Sojuzplodoimport v. Spirits Int'l N.V., SPI, 300 Fed. App'x 611, 2010 WL 4812972, at \*1 (2d Cir. 2010).[5] With the New York Court of Appeals accepting the doctrine of third-party reliance, the Second Circuit seemingly disavowing it, and the intermediate New York State courts divided, the federal district courts have also been divided on the issue. Compare Siotkas v. LabOne, Inc., 594 F. Supp. 2d 259, 275-76 (E.D.N.Y. 2009) (rejecting doctrine of third-party reliance), and Morris v. Castle Rock Entm't, Inc., 246 F. Supp. 2d 290, 296 (S.D.N.Y. 2003) ("[T]hird-party reliance is not enough to sustain a claim for common law fraud."), with O'Brien v. Argo Partners, Inc., 736 F. Supp. 2d 528, 537 (E.D.N.Y. 2010) (holding that "fraud may exist where a false representation is made to a third party") (quoting Ruffing, 308 A.D.2d at 528), Chevron Corp. v. Donziger, --- F. Supp. 2d ----, 2012 WL 1711521, at \*17 (S.D.N.Y. May 14, 2012), and Hyosung Am. Inc. v. Sumagh Textile Co., Ltd., 25 F. Supp. 2d 376, 383-84 (S.D.N.Y. 1998) ("[A] plaintiff may state a claim for fraud where a defendant's misrepresentation caused a third party to extinguish its financial obligation to the plaintiff.") (citing Buxton, 239 A.D.2d at 453-54). Thus, "[t]here is little doubt that this Court is in the undesirable position of choosing between dueling pronouncements of New York law made by two Courts to

---

[5] However, two recent district court cases that accepted the third-party reliance doctrine were summarily affirmed by the Second Circuit. See O'Brien v. Argo Partners, Inc., 736 F. Supp. 2d 528, 537 (E.D.N.Y. 2010), aff'd 426 Fed. App'x 36, 2011 WL 3805744 (2d Cir. 2011); Liberty Life Assurance Co. of Boston v. Bahan, No. 09 Civ. 4715(JRS), 2010 WL 3431147, at \*2 n.4 (S.D.N.Y. Aug. 23, 2010), aff'd 441 Fed. App'x 21, 2011 WL 4552424 (2d Cir. 2011).

whom it is obliged to defer." Chevron Corp., 2012 WL 1711521, at *17 (internal quotation omitted). "With the greatest respect for my Circuit brethren," this Court agrees with its colleagues in the Southern District "that the New York Court of Appeals' previous decisions allowing recovery for common law fraud based on third party reliance remains authoritative and, in any case, that that Court, were it faced with the question anew, would adhere to that position." Id.

Deciding that the third-party reliance doctrine is good law in New York, the Court now turns to whether it applies to Prestige's claims against the individual defendants.

### 2. The Third-Party Reliance Doctrine Applies

The applicability of that doctrine to this case was presaged by Buxton Mfg. Co. v. Valiant Moving & Storage, Inc., 239 A.D.2d 452 (2d Dep't 1997). In Buxton, the defendant had a contract with a government agency to replace heat exchangers, which it purchased from the plaintiff. Id. at 453. An employee of the defendant then sent a "progress payment certification" to the government agency representing that all subcontractors had been fully paid. The plaintiff, claiming that it had not been fully paid, sued the defendant for fraud. Id. The defendant moved to dismiss the claim, arguing that any allegedly fraudulent representations were directed at the government agency, so plaintiff could not satisfy the elements of fraud. Id. The Supreme Court denied the motion and the Appellate Division affirmed, stating that "[f]raud . . . may also exist where a false representation is made to a third party, resulting in injury to the plaintiff." Id. at 453-54 (citing Eaton, Cole & Burnham Co. v. Avery, 83 N.Y. 31 (1880); Rice v. Manley, 66 N.Y. 82 (1876)).

11

Plaintiff urges Buxton to be "directly on point and requires the denial of defendants' motion," Pl.'s Opp'n at 8, while defendants criticize Buxton as a "brief decision, containing minimal legal analysis" that "blindly relie[s] upon Eaton, Cole & Burnham and Rice." Defs.' Reply at 8. Plaintiff is correct. The holding of Buxton is no less persuasive for its brevity, and for its obedience to the teaching of its highest court, the New York Court of Appeals. Accordingly, the Court finds that plaintiff has sufficiently alleged reliance under the New York third-party reliance doctrine and, therefore, has standing to bring claims for fraud against the individual defendants.

Having concluded that Prestige has standing, the Court now turns to Prestige's specific claims against the individual defendants.

### C. Fraud Claims

Prestige's claims against the individual defendants are fraud-based, Compl. ¶¶ 25-32, 37-44, 49-56, and thus they must meet the particularity requirements of Rule 9(b) of the Federal Rules of Civil Procedure. Rule 9(b) provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." To satisfy Rule 9(b), a complaint must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." Shields v. Citytrust Bancorp., Inc., 25 F.3d 1124, 1128 (2d Cir. 1994). "'[W]hen the pleader is asserting that third persons have been defrauded,' and 'when facts are peculiarly within the opposing party's knowledge,'" then "[t]he requirement that the pleadings for fraud be stated with sufficient particularity is relaxed." N.B. Garments

12

(PVT.) Ltd. v. Kids Int'l Corp., No. 03 Civ. 8041(HB), 2004 WL 444555, at *2 (S.D.N.Y. Mar. 10, 2004) (quoting Segal v. Gordon, 467 F.2d 602, 607-08 (2d Cir. 1972)).

Defendants contend that Prestige's fraud claims fail to meet the particularity requirements of Rule 9(b) because "the complaint does not allege that [the individual defendants] intended to defraud Prestige or that Prestige relied upon any representation made by them." Defs.' Mem. at 1.

"The elements of fraud under New York law are: (1) a misrepresentation or a material omission of fact which was false and known to be false by defendant, (2) made for the purpose of inducing the other party to rely upon it, (3) justifiable reliance of the other party on the misrepresentation, and (4) injury." Premium Mortg. Corp. v. Equifax, Inc., 583 F.3d 103, 108 (2d Cir. 2009) (internal quotation marks and citation omitted).

Prestige has alleged specific facts satisfying the elements of common law fraud under New York law. Those facts are unambiguously recited above in describing the background of the case and need not be repeated. The defendants' claim of a pleaded deficiency in not alleging that the defendants "intended to defraud Prestige or that Prestige relied upon any representation made by them" can only be regarded as frivolous. Defs.' Mem. at 1. It is hornbook learning that the state of one's mind, intent, can almost never be proved directly and invariably is proved circumstantially.[6] Which

---

[6] "Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b).

13

inference, other than intent, could even the most inventive and imaginative mind ascribe to the false representations made to the Parks Department?[7]

### III. CONCLUSION

For all of the foregoing reasons, defendants' motion to dismiss the complaint is DENIED.

SO ORDERED.

Dated:     Brooklyn, New York
           October 10, 2012

                                                                                 /s/ ILG
                                           I. Leo Glasser
                                           Senior United States District Judge

---

[7] Since the Court finds that the alleged loss of payment is sufficient to satisfy the injury element of common law fraud under New York law, it need not reach the issue of the mechanic's lien.